**BRENNER ASSOCIATES, INC.**

v.

**Laurent L. ROUSSEAU et al.**

No. 86-11-Appeal.

Supreme Court of Rhode Island.

Feb. 9, 1988.

Christopher F. Long, Fall River, Mass., for plaintiff.

Eric Paul Chappell, Portsmouth, for defendants.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on the plaintiff's appeal from a judgment of the Superior Court entered after the defendants' motion for a directed verdict had been granted. The trial justice had reserved decision on the motion and submitted the case to the jury, which returned a verdict for the plaintiff. We affirm the judgment for the defendant.

The plaintiff, Brenner Associates, Inc., a corporation organized and existing under the laws of the Commonwealth of Massachusetts, is qualified to do business in the State of Rhode Island. The business operates as a licensed real estate broker. George H. Brenner of Westport, Massachusetts, is president of the corporation.

Laurent L. Rousseau of Portsmouth, Rhode Island, is an attorney who appears as a defendant both personally and in his capacity as receiver of and for Le Rocham-

beau, Inc., a Rhode Island corporation, which is also a named defendant.

Other individual defendants—Russell F. Gomes, Joseph P. Daquay, Lawrence A. Aubin, George Karousos, Anna Karousos, and James Nelson—are persons whose involvement in this matter will be discussed below where necessary. The remaining defendants are Monterey Corporation and Sea Fare, Inc., Rhode Island corporations. (Hereafter individual parties will be referred to by their last names.)

As the duly appointed receiver, Rousseau was in charge of the affairs of Le Rochambeau, Inc., from 1976 until after the commencement of this action. Brenner testified that he had contacted his brother-in-law Gomes, and Daquay, who were the principal stockholders in Le Rochambeau, Inc., seeking to market the corporation's real estate in Portsmouth, Rhode Island. After the three conferred, Brenner prepared an agreement providing for multiple listing of the property, which agreement also granted an exclusive right to sell to Brenner Associates, Inc. The partners advised Brenner that he would have to submit the agreement to "their attorney" for final approval. Brenner sent a copy to Rousseau, who represented Gomes.[1] After several telephone conversations, he received from Rousseau a "red marked" agreement that contained several deletions made and initialed by Rousseau. The agreement, signed by Rousseau as receiver of Le Rochambeau, Inc., and by Brenner as president of Brenner Associates, Inc., was introduced into evidence as plaintiff's exhibit. It was the only agreement executed by Brenner and Rousseau.

The agreement described the premises to be sold and the multiplelisting services to be employed. It gave Brenner Associates, Inc., an exclusive right to sell the property which expired on March 23, 1981. It provided for a sale price of $225,000 and a 10 percent brokerage fee to plaintiff if a buyer was found ready, willing, and able to purchase the property within the terms of the agreement or if the property were sold within six months of the expiration of the agreement to a buyer who was referred to or shown the property by the realtor. The agreement further provided for a brokerage rental fee to the realtor if the property was rented or leased to a party during the period of the agreement or, within six months of the expiration of the agreement, to persons shown the property by the realtor. The agreement signed and returned by Rousseau as receiver had six deletions, each initialed by Rousseau. One of the provisions so deleted that is of particular interest to this case reads as follows: "Should the property subsequently be purchased by the tenant herein described, then the SELLER agrees to pay to the REALTOR a fee for professional services of *ten* percent (10%) of the selling price." Although this version, according to Brenner, was not what he had agreed to, he signed the agreement as president of Brenner Associates, Inc., "in order that [the property] could be put into the multiple listing service [and he] sent back a cleaned-up version" of the agreement for Rousseau's signature. The "cleaned-up" version was never signed by Rousseau.

In October 1980 Brenner began showing the property. On December 20, 1980, defendants George and Anna Karousos made an offer to buy the property for $175,000 and gave Brenner a $1,000 binder. Gomes and Daquay told Brenner that the offer was unacceptable, and the binder check was returned. In mid-January 1981 Gomes told Brenner that he could no longer show the property.

Sometime in 1981 Brenner learned that the Karousoses were operating a restaurant at the site of the LeRochambeau property. Assuming them to be the owners of the property, he asked defendant Gomes for his commission. This exchange oc-

---

1. When the stockholders in Le Rochambeau, Inc., disagreed on management, the business was placed in receivership in August 1976. Rousseau was appointed a coreceiver along with another attorney apparently nominated by Daquay. That attorney later died. No one was appointed to replace him. Rousseau thereafter acted as the sole receiver but testified that all matters relating to Le Rochambeau were cleared with and approved by an attorney who represented Daquay.

curred sometime during 1981–82. Gomes refused to pay a commission, saying that the Karousoses were not his buyers. Brenner later learned that the property had been purchased by the Monterey Corporation, but he did not know then whether the Karousoses were involved in the corporation.

Brenner never had shown the property to the Karousoses, and he admitted that he was not responsible for introducing them to Gomes and Daquay. He also acknowledged that the only agreement he and Rousseau signed was the signed agreement entered into evidence as plaintiff's exhibit.

George Karousos testified that he and his wife had been interested in the property since the end of July 1980. He had previously offered Gomes a $3,000 deposit on an offer to buy or lease the property. The offer was declined. Just before Christmas 1980 Brenner called him to try to arrange a sale of the property. Karousos told Brenner he did not want to buy the property but instead wanted to lease it for a year with an option to buy if the restaurant was successful. After that offer to lease was rejected by Brenner, Karousos said that he, Gomes, and Daquay agreed on an arrangement to lease the property. The terms of the lease, signed February 1, 1981, by Rousseau as receiver of Le Rochambeau, Inc., and George and Anna Karousos was a rental of $1,000 a month and an option to purchase. One of the conditions of the agreement was that the Karousoses would have to pay off a first mortgage.

In December of 1981 the Karousoses wanted to purchase the property but did not have the money required to pay off the first mortgage. However, a friend who was president of the Monterey Corporation offered to have her corporation buy the property and lease it back to the Karousoses for ten years with an option to purchase and a right of first refusal. That offer was accepted by the Karousoses. Karousos testified that initially he had wanted to lease the property only because of the uncertainties of the restaurant business, particularly the Le Rochambeau site. At the time he did not have the ability to buy the property because he had already lost $33,000 in a restaurant that he had previously operated in Bristol, Rhode Island.

Rousseau, the receiver, testified that the agreement introduced into evidence signed by himself as receiver and Brenner for the realty corporation is the only agreement the parties entered into. The other agreement forwarded to him by Brenner was not signed by any of the parties and "it doesn't reflect the agreement that was reached." He said that the Karousoses told him they wanted to buy the property in January or February of 1982. The Monterey Corporation took title to the property in March of 1982.

We would first state that our examination of this record discloses that technically, this appeal is not properly before us because no judgment was entered in Superior Court.

The trial justice had granted defendants' motion for a directed verdict. Rule 58(a) of the Superior Court Rules of Civil Procedure provides in part that "(1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment * * *."

This court has ruled that "[u]ntil a judgment is entered, no appeal can be taken, and an appeal filed before the entry of judgment on a separate paper is premature and subject to dismissal." *McClellan v. Thompson*, 114 R.I. 334, 341, 333 A.2d 424, 428 (1975); *see also East Providence Credit Union v. Brown*, 104 R.I. 92, 242 A.2d 428 (1968).

■ Since the failure to enter judgment was apparently a clerical oversight, however, we shall not dismiss this appeal, which dismissal would seriously delay a final disposition of this case. Rather we shall remand the case to the Superior Court at the conclusion of this opinion for entry of judgment on defendants' motion for a directed verdict nunc pro tunc.

■ The only issue before us on appeal is whether the trial justice erred in granting defendants' motion for directed verdict.

In reviewing such a decision, this court, like the trial justice, will examine the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party but we shall not evaluate the credibility of witnesses nor weigh the evidence. *Solitro v. Moffatt*, 523 A.2d 858, 861 (R.I. 1987); *Gordon v. St. Joseph's Hospital*, 496 A.2d 132 (R.I. 1985). If there is evidence supporting the nonmoving party or evidence on which reasonable minds could differ, the jury is entitled to decide the facts and the motion should be denied. *Marcotte v. Harrison*, 443 A.2d 1225, 1229 (R.I. 1982).

■ Initially we would point out that any writings other than the original one executed by Rousseau and Brenner are irrelevant to the issue before us. That document is the only one signed by Rousseau, the party to be charged. Rhode Island's Statute of Frauds G. L. 1956 (1985 Reenactment) § 9-1-4(6) provides that no action to charge any person upon an agreement to pay a commission for the sale of real estate shall be brought unless the agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized.

Also this court has stated on many occasions " 'clear and unambiguous language set out in a contract is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions.' " *Elias v. Youngken*, 493 A.2d 158, 163 (R.I. 1985). The executed listing agreement contains no ambiguity. Therefore the rights and duties of the parties in this case are governed by its terms. The agreement was in effect from September 23, 1980, to March 23, 1981. A clause in the printed agreement that provided for payment of a broker's commission if a tenant who had been shown the property by the broker later purchased the property had been deleted.

■ Any fair reading of the agreement discloses that plaintiff was not entitled to receive a commission for several reasons. A sale of the property did not occur during the period of the agreement. The evidence is uncontradicted that the Karousoses were not ready, willing, or able to purchase the property. Furthermore, the property was purchased after the expiration date of the agreement, not by the Karousoses, but by the Monterey Corporation. No evidence exists that plaintiff was in any way instrumental in bringing about that sale. Furthermore, even if plaintiff had been able to prove that the Monterey Corporation was merely a sham to hide the fact that the Karousoses actually purchased the property, plaintiff would still not be entitled to a commission because the clause providing for a commission for a subsequent sale to a tenant was not a part of the agreement signed by the parties.

In its brief, the plaintiff makes vague allegations of fraud and misrepresentation, but there is no evidence in the record to support an allegation that the purchase by Monterey Corporation was fraudulent. Since no evidence exists to support the plaintiff's claim to a real estate broker's commission, no material evidence exists upon which reasonable minds could differ. That being the case, the trial justice correctly granted the defendants' motion for directed verdict.

For these reasons the plaintiff's appeal is denied and dismissed. The papers of this case are remanded to the Superior Court for entry of judgment for the defendants nunc pro tunc and that judgment for the defendants is affirmed.