**NORWEST MORTGAGE, INC.**

v.

**Kevin MASSE et al.**

**No. 2000–474–Appeal.**

Supreme Court of Rhode Island.

June 5, 2002.

Michelle C. Davenport, Thomas J. Walsh, Cumberland, for Plaintiff.

Patrick T. Conley, East Providence, John DiMeglio, North Providence, Fernando S. Cunha, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

A secured creditor seeks to set aside a tax sale involving certain real estate formerly owned by a debtor because the sale occurred while the debtor's bankruptcy was pending and while the automatic stay of all legal proceedings against the debtor was still in effect.[1] The plaintiff, secured

---

1. 11 U.S.C. § 362(a)(1) of the United States Bankruptcy Code provides, in pertinent part, that a filed bankruptcy petition:

"operates as a stay, applicable to all entities, of—
"(1) the commencement or continuation, including the issuance or employment of

creditor Norwest Mortgage, Inc. (Norwest), has appealed from a Superior Court judgment dismissing its complaint to set aside a tax sale. The defendants, tax-title purchasers Kevin Masse, K.B. Riccio, and Karolye White, also have filed appeals from the entry of final judgment and from the court's denial of their objection to the entry of the final judgment. After a pre-briefing conference, a single justice of this Court ordered the parties to show cause why the issues raised in these appeals should not be summarily decided. Because they have not done so, we proceed to decide the appeals at this time.

### Facts and Travel

In February 1992, defendant Christopher Robbins (debtor) executed a note in favor of Norwest, in the amount of $169,609. A mortgage on property owned by the debtor and located in the city of Cranston (city) secured the note. In December 1996, debtor filed a so-called Chapter 13 petition for bankruptcy with the United States Bankruptcy Court, thereby triggering the automatic stay of all legal proceedings against him. On June 30, 1997, while the bankruptcy petition was pending, the city sold the debtor's property at a tax sale to defendant Karolye White (White). White was unaware of the debtor's pending bankruptcy. On November 6, 1997, the bankruptcy court granted Norwest relief from the automatic stay, but it never foreclosed on the mortgage. Thereafter, debtor converted his bankruptcy to a Chapter 7 petition. On March 30, 1998, the bankruptcy court granted debtor a discharge and closed the bankruptcy on April 15, 1998.

In July 1998, White filed a petition to foreclose a tax lien on the property, giving notice thereof to Norwest. Thereafter, on January 5, 1999, a justice of the Superior Court issued a final decree ordering that all rights of redemption be forever foreclosed and barred. On January 12, 1999, White transferred his ownership interest in the property to defendants Kevin Masse and K.B. Riccio. On July 7, 1999, however, Norwest filed a complaint seeking to set aside the original tax sale on the grounds that it was void because the city consummated the sale during the debtor's bankruptcy in violation of the automatic stay. On October 13, 1999, Norwest filed a motion for summary judgment.

On May 8, 2000, a Superior Court motion justice denied Norwest's motion for summary judgment. She ruled that because Norwest was a non-debtor third party, it did not have standing to challenge the tax sale. She then dismissed Norwest's complaint *sua sponte*. After this decision, the court entered an order on June 23, 2000, providing that

> "[j]udgment shall enter in this matter for the Defendants, Kevin Masse, K.B. Riccio, Karolye White, and the City of Cranston. The [c]ourt hereby makes an express determination under [Super. R. Civ. P.] 54(b) that there is no just reason for delay and that final judgment shall enter for the Defendants, Kevin Masse, K.B. Riccio, Karolye White, and the City of Cranston."

Initially, no final judgment entered in the wake of this order. Eventually, however, upon learning that a final judgment had not entered, Norwest sought to do so. The defendants objected, arguing that the June 23 order itself constituted a final judgment that had previously entered.

process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." (Emphasis added.)

The trial justice found that no judgment had entered and ordered the parties to submit a final judgment. On November 15, 2000, she entered a final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure. Thereafter, Norwest filed a notice of appeal on November 21, 2000. The defendants also filed two separate notices of appeal—one from the trial justice's denial of their objection to the entry of the final judgment and one from the entry of the final judgment.

We first address the propriety of Norwest's appeal. At the outset, defendants argue that Norwest's appeal is untimely. In support of their contention, they assert that the order entered on June 23, 2000, was a final judgment because "it was set forth on a separate document and it terminates all the litigation between the parties." The defendants aver that Norwest had twenty days from the entry of the June 23 order in which to file its appeal. They argue that because Norwest did not file a notice of appeal until more than four months later, its appeal was untimely and should be summarily dismissed. The defendants also contend that, because an appealable order entered on June 23, 2000, there was no need for a final judgment to enter and, therefore, Norwest's appeal is untimely.

Norwest, however, insists that its appeal is from the final judgment that entered on November 15, 2000. It argues that the order that entered on June 23, 2000, was not a final judgment from which it could appeal. The June 23 order, although in writing and on a separate paper, was not a final judgment, it asserts, but only an interlocutory order for which a separate judgment must enter before any appeal can be filed. Furthermore, Norwest contends, any appeal from the June 23 order would have been premature and subject to dismissal.

■ We agree with Norwest on this point. Rule 58 of the Superior Court Rules of Civil Procedure states that "[e]very judgment shall be set forth on a separate document. A judgment is effective and shall be deemed entered when so set forth and signed by the Clerk." Furthermore, a judgment must be entered in the docket, showing the date of its entry, as provided in Rule 79(a) of the Superior Court Rules of Civil Procedure, which states, in pertinent part, that:

"All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made."

In this case, the docket does not show that any judgment entered on June 23, 2000. On the contrary, the docket sheet indicates that: "Judgment *shall* enter for defs. Kevin Masse, K.B. Riccio, Karolye White and the City of Cranston only." (Emphasis added.) This Court has noted that, other than the requirement that a judgment be set forth on a separate paper, Rule 58 "does not prescribe what elements are essential to a judgment" nor does it "demand any particular words or a peculiar formal act." *Malinou v. Kiernan*, 105 R.I. 299, 301, 251 A.2d 530, 531 (1969). Our case law, however, addresses what constitutes the proper entry of a judgment. *See, e.g., Brenner Associates, Inc. v. Rousseau*, 537 A.2d 120 (R.I.1988) (no

appeal can be taken until judgment has entered); *McClellan v. Thompson,* 114 R.I. 334, 333 A.2d 424 (1975) (appeal filed before the entry of judgment is premature and subject to dismissal); *East Providence Credit Union v. Brown,* 104 R.I. 92, 242 A.2d 428 (1968) (appeal from justice's decision rather than from a judgment cannot be entertained).

In this case, an order entered on June 23, 2000, directing the entry of final judgment. By its terms, the order was interlocutory because it directed that "final judgment shall enter" for certain named defendants. However, no final judgment entered until November 15, 2000. If plaintiff had filed its appeal from the June 23 order, it would have been premature and subject to dismissal. Therefore, Norwest's appeal from the judgment that entered on November 15, 2000, we hold, was timely and it is therefore properly before this Court.

On the merits of its appeal, Norwest argues that the tax sale on the property was void. In support of this contention, it maintains that the city's tax sale of an interest in the debtor's property during a bankruptcy proceeding was in violation of the automatic stay provisions of 11 U.S.C. § 362(a) of the federal Bankruptcy Code (code). Therefore, Norwest asserts, all proceedings that flowed from the tax sale are void and the motion justice should have vacated the final judgment in the tax foreclosure action and permitted it to pay the taxes and redeem the property. Norwest maintains that, pursuant to this Court's holding in *Shackleton v. Coffee 'An Service, Inc.,* 657 A.2d 544 (R.I.1995), "a tax sale held during a bankruptcy is void." Norwest also contends that, as a holder of a valid mortgage interest in the property, it has standing to challenge the tax sale. Norwest relies on the case of *Soares v. Brockton Credit Union,* 107 F.3d 969 (1st Cir.1997) to support its assertion that creditors, as well as debtors, have standing to challenge a tax sale which has taken place in violation of the automatic stay provisions of the code. It also alleges that 11 U.S.C. § 362(h) of the code grants standing to creditors as well as debtors.

The defendants counter that the tax sale of the debtor's property did not violate the automatic stay provision of the code. They maintain that the *Shackleton* case is not helpful in this situation because it provided "no substantive discussion of bankruptcy law as it applies to the automatic stay, but rather merely stands for the procedural point that a tax title holder must first file a claim with the city or town council before proceeding in the state courts on a claim for damages arising out of a defective tax title." They also assert that even if the tax sale was in violation of the automatic stay, Norwest lacked standing to challenge it. Additionally, defendants allege that the sale cannot be voided because White was a good faith purchaser at the tax sale pursuant to 11 U.S.C. § 549(c) of the code. They also insist that the limitations period for voiding post-petition tax-title transfers has expired and only the bankruptcy court has original and exclusive jurisdiction over Norwest's claim.

We shall first assume, *arguendo,* that Norwest possessed standing as a mortgagee of record to challenge the validity of the tax sale. *See* G.L.1956 § 44-9-11 (requiring tax collector to notify mortgagee of record of proposed tax sales). In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180, 187 (1983), the United States Supreme Court stated that "[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." In this case, Norwest received such notice. Norwest, however,

never filed an answer or challenged the validity of the tax sale after receiving this notice.

Section 44–9–31 provides that when contesting the validity of a tax sale, "the person shall do so by answer filed in the proceeding on or before the return day * * * *or else be forever barred from contesting or raising the question in any other proceeding.*" (Emphasis added.) Because Norwest never contested the tax title in response to the notices it received to do so, it was "forever barred" from doing so in a later proceeding to set aside the tax sale.

Further, Norwest's reliance on *Soares* is misplaced. In that case, it was the debtor, not a creditor, who was challenging the violation of an automatic stay. And the First Circuit Court noted that, even though the automatic stay provides safeguards for creditors, it "is among the most basic of debtor protections under bankruptcy law. * * * It is intended to give the debtor breathing room by 'stopping all collection efforts, all harassment, and all foreclosure actions.' " *Soares,* 107 F.3d at 975. Also, Norwest's citation to the *Shackleton* case is not on point because that case did not involve a secured creditor who sought to challenge a tax sale after failing to comply with § 44–9–31.

Therefore, the motion justice properly concluded that Norwest lacked a legal basis to contest the validity of the tax sale in this case—even if the sale occurred in violation of the automatic stay provisions of the code. For this reason, we need not reach the other arguments raised by the parties.

Accordingly, we deny Norwest's and the defendants' appeals and affirm the judgment.