William J. MEDEIROS et al.

v.

BANKERS TRUST COMPANY et al.

No. 2010–145–Appeal.

Supreme Court of Rhode Island.

March 13, 2012.

Erica M. O'Connell, Esq., for Plaintiff.

Peter P. D'Amico, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

This appeal obliges us to once again wade into the sometimes murky waters of Rhode Island's tax-sale statute, and more specifically, its redemption foreclosure process. The issue presented is whether a Superior Court judgment can "re-vest" title to property back to a prior owner after that owner has been defaulted in a petition to foreclose his right of redemption.

This case came before the Supreme Court on December 1, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

It is necessary to begin by recounting the tangled facts and extensive proceed-

ings that ultimately led to the present action before this Court. On May 17, 1996, the plaintiff William J. Medeiros (Medeiros) became the owner of a certain parcel of real estate at 360–362 Devil's Foot Road in the Town of North Kingstown (the property). That same day, Medeiros executed a mortgage to the property to secure a note in the amount of $68,750. The original mortgagee then assigned the mortgage to Bankers Trust Company (Bankers). Medeiros made monthly mortgage payments through Bankers's service company, Select Portfolio Servicing, Inc. (Select), until he experienced financial difficulties. At around the same time, Medeiros also failed to pay the necessary real estate taxes to the Town of North Kingstown (the town).

### The Tax Lien Case

On June 4, 1999, the town held a tax sale of the property. Prior to the tax sale, the town provided notice pursuant to G.L.1956 §§ 44–9–10 and 44–9–11 [1] to Medeiros and Fleet Bank.[2] Bankers, however, as mortgagee, did not receive notice of the tax sale. Fiduciary Trust Services (Fiduciary) purchased the property at the tax sale and received a tax deed executed by the town on June 16, 1999.

On June 26, 2000, Fiduciary filed a petition to foreclose Medeiros's right of redemption to the property in the Superior Court for Washington County (the tax lien case). The record indicates that Medeiros was properly notified of the petition pursuant to § 44–9–27,[3] but that he failed to file an answer. On July 28, 2000, a final de-

1. These statutes govern the notice required to be provided to taxpayers and other parties in interest prior to a real estate tax sale.

2. The record leaves us uncertain as to why Fleet Bank—an institution with no apparent

interest in the property—was provided notice of the tax sale.

3. This statute governs the requisite notice to be provided to interested parties upon the filing of a foreclosure petition.

cree was entered in the tax lien case, foreclosing and barring all rights of redemption, including those that Medeiros had in the property.

### The Notice Case

Thereafter, on October 10, 2000, Bankers filed a complaint against Medeiros, Fiduciary, and the town,[4] seeking to invalidate the tax sale and the redemption foreclosure (the notice case). On November 24, 2000, Bankers filed an amended complaint, alleging that the tax sale of the property was void because the town failed to give it notice. As part of its requested relief, Bankers petitioned the Superior Court to order Fiduciary to issue a redemption deed in favor of Medeiros. Because Medeiros believed that his rights were adequately protected by Bankers, he did not respond or enter his appearance in the notice case, despite being named as a defendant. On December 17, 2001, the matter was presented before a justice of the Superior Court for Washington County, wherein "the [c]ourt granted summary judgment for Bankers Trust, and default judgments against Medeiros, Stephen Goldman, and Fiduciary Trust entered."

On January 15, 2002, a judgment was entered against Medeiros and Fiduciary in the notice case (the January 2002 judgment), declaring the prior tax sale void, vacating the final decree entered in the tax lien case, and "vest[ing the property] back into William Medeiros[,] subject to the mortgage to Bankers * * *." Medeiros received a copy of the January 2002 judgment; one was also recorded in the land

evidence records of the town on March 14, 2002.

### Fiduciary Moves to Vacate

On June 21, 2002, Fiduciary filed a motion to vacate the January 2002 judgment, asserting that it was not properly served with the complaint filed against it in the notice case, and, that it did not receive notice of Bankers's motions for default judgment and summary judgment. Medeiros here contends that he never received notice of this motion to vacate. Nevertheless, in an order entered on September 6, 2002, the Superior Court vacated the default judgment and summary judgment against only Fiduciary.[5] No copy of this order was sent to Medeiros, nor was the order recorded in the land evidence records of the town.

At some point in 2004, unaware of any potential cloud on the property, Medeiros entered into negotiations with Select (Bankers's service company) in an attempt to settle the amount owed based on the mortgage note. In a letter dated April 29, 2005, Select indicated to Medeiros that to effectively discharge the mortgage, a payoff amount of $69,893.53 was required on or before May 6, 2005. Medeiros's sister, Margaret E. Cambra (Cambra),[6] agreed to provide the necessary funds to satisfy the outstanding mortgage, as well as $5,106.47 to satisfy all outstanding real estate taxes in exchange for title to the property. On May 2, 2005, Cambra wired the $69,893.53 to Select in satisfaction of the mortgage and also paid to the town the delinquent taxes. Thereafter, without knowledge of the order vacating the default judgment

---

4. The complaint also named Stephen J. Goldman as a defendant based on his status as a "lienor." The record reflects that he never answered nor appeared and was defaulted. Thus, for the purposes of this appeal, his status as a defendant in the notice case plays no role.

5. Finding that Fiduciary was not properly served in the notice case and did not receive adequate notice, the lower court granted the motion to vacate.

6. Cambra is also a plaintiff in this appeal.

and summary judgment against Fiduciary in the notice case, Medeiros executed a warranty deed conveying the property to Cambra on May 31, 2005.

## The Stipulation Order in the Notice Case

Concurrently, on May 31, 2005, and prior to the recordation of the property transfer from Medeiros to Cambra in the land evidence records, a stipulation between Bankers, Fiduciary, and the town was entered as an order of the Superior Court (stipulation order) in the notice case and was recorded that day in the land evidence records of the town. The stipulation order vacated the December 17, 2001 summary judgment in favor of Bankers, and vested title to the property in Fiduciary dating to December 17, 2001, and no longer subject to the mortgage held by Bankers. Furthermore, the stipulation order dismissed with prejudice all claims, counterclaims, and cross-claims of the parties.[7]

Medeiros did not receive any notice of the stipulation or subsequent order. Instead, Medeiros first learned of the stipulation order on June 3, 2005, when a final title search of the property was performed prior to the recording of the deed from Medeiros to Cambra. Despite the existence of the recorded stipulation order, plaintiffs went ahead and recorded the warranty deed to the property.

## The Instant Action

In an attempt to clear the title to the property, Medeiros and Cambra filed the instant action in the Superior Court for Washington County on June 17, 2005, seeking a declaratory judgment invalidating the May 31, 2005 stipulation order.[8] The complaint also requested that all clouds on the property be removed and that Cambra be adjudged the fee simple owner of the property by virtue of the warranty deed from Medeiros. The matter was tried on October 14, 2008, and November 18, 2008, before a justice of the Superior Court, sitting without a jury.

In a written decision issued on December 28, 2009, the Superior Court determined that as a result of the stipulation order, Fiduciary and its assigns were the proper record title holders of the property. In reaching this decision, the trial justice found that the stipulation order adequately adjudicated the issue of whether Bankers received notice of the tax sale in the notice case. Therefore, the trial justice found that Medeiros was barred from challenging the stipulation order based on Bankers's lack of notice because "any claims regarding Bankers Trust's lack of notice [was] precluded by the doctrine of *res judicata.*" Additionally, she found that Medeiros failed to protect his interest in the property—and his right to receive notice of the stipulation—by defaulting in both the tax lien case and the notice case. Because of his "willful failure to answer, or appear, in two separate proceedings," the trial justice therefore found no violation of Medeiros's due process rights.

---

7. Also on May 31, 2005, Fiduciary executed and recorded a quitclaim deed conveying the property to Brownell Realty. Brownell Realty later contracted to sell the property to one Daniel Konuch.

8. The complaint comprised several counts including a count for unjust enrichment against the town in regard to the $5,106.47 Cambra paid for outstanding taxes on the property and a count for mutual mistake against Select and Bankers concerning the $69,893.53 Cambra paid in satisfying the mortgage. Select subsequently returned that amount to Cambra on its own accord. The December 28, 2009 decision by the lower court in this matter required that the town return the tax payment to Cambra. The additional counts are not relevant to this appeal.

Final judgment entered on January 20, 2010. Medeiros filed a timely notice of appeal on February 2, 2010. On appeal, Medeiros asserts that this Court's analysis should begin with the Superior Court's January 2002 judgment in the notice case, in which the lower court declared the tax sale void, vacated the final decree entered in the tax lien case, and vested the property back into Medeiros subject to Bankers's mortgage. Medeiros argues that the Superior Court decision on December 28, 2009, in the instant action should be reversed because he received no notice of Fiduciary's motion to vacate the January 2002 judgment, the order granting that motion, or the 2005 stipulation order, in violation of his due process rights.

Furthermore, in regard to his prior default in the notice case, Medeiros contends that the stipulation order was a "new or additional claim[ ] for relief" in the notice case. Thus, in his view, Rule 5(a) of the Superior Court Rules of Civil Procedure also entitled him to receive notice of (1) Fiduciary's motion to vacate the January 2002 judgment in the notice case, (2) the court's order granting that motion, and (3) the subsequent stipulation order.[9]

In response, Fiduciary argues that because Medeiros defaulted in the tax lien case, the issue presented in the notice case initiated by Bankers was limited to Fiduciary's and Bankers's interests only. To support this position, Fiduciary points to the language of the Superior Court's order of September 6, 2002, that vacated the default judgment and summary judgment, which stated that "[t]he default judgment and summary judgement [sic ] are vacated as to Fiduciary Trust Services only."

Therefore, Fiduciary avers that the prior "re-vestment" of the property back to Medeiros (subject to Bankers's mortgage) by virtue of Bankers's successful motion for summary judgment was "erroneously entered" by the Superior Court. Consequently, Fiduciary asserts that this "wrongful granting of title back to * * * Medeiros" failed to create a new claim and re-attach Medeiros's due process right to notice. Rather, Fiduciary argues, Medeiros's due process rights were satisfied when Medeiros was given notice of the proceeding to foreclose on his right of redemption after the tax sale.

As to Medeiros's Rule 5(a) argument, Fiduciary contends that because Medeiros defaulted in the tax lien case, the subsequent proceedings (and the stipulation order) only sought to clarify the status between Bankers and Fiduciary rather than raise any new claims against Medeiros. Accordingly, Fiduciary contends that Rule 5(a) did not entitle Medeiros to notice of the stipulation order.

In sum, Medeiros takes the following position—that the January 2002 judgment "re-vesting" the property back to him and Bankers nullified the tax sale and the foreclosure of the right of redemption, and effectively reverted Medeiros and Bankers to their former positions prior to the tax sale, as mortgagor and mortgagee of the property, respectively. Following this position to its logical end, Medeiros concludes that based on this "re-vesting," he was entitled to notice prior to the stipulation order being entered. Unfortunately for Medeiros, however, our longstanding authority in this area does not comport with this line of reasoning. Hence, we

---

9. Rule 5(a) of the Superior Court Rules of Civil Procedure reads in pertinent part:

"No service need be made on parties in default for failure to appear except that motions for assessment of damages and pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."

hold that the January 2002 judgment did not "re-vest" the property back to Medeiros and that he was not entitled to subsequent notice.

## II

## Standard of Review

■■ "This Court views deferentially the factual findings of a trial justice sitting in a nonjury case." *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 41 (R.I.2009) (quoting *Manchester v. Pereira*, 926 A.2d 1005, 1011 (R.I.2007)). We therefore "will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Id.* (quoting *Macera v. Cerra*, 789 A.2d 890, 892–93 (R.I.2002)). "[I]f, on review, the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Nardone v. Ritacco*, 936 A.2d 200, 204 (R.I.2007) (quoting *Imperial Casualty and Indemnity Co. v. Bellini*, 888 A.2d 957, 961 (R.I.2005)).

■ "In contrast to our deferential [standard regarding] factual findings made by a trial justice," *Grady*, 962 A.2d at 41 (citing *Manchester*, 926 A.2d at 1011), when "the issue is a pure question of law," we review using a *de novo* standard. *Ashley v. Kehew*, 992 A.2d 983, 987 (R.I.2010) (citing *Ondis v. City of Woonsocket ex rel. Treasurer Touzin*, 934 A.2d 799, 802 (R.I. 2007)).

## III

## Discussion

■ This Court's analysis begins with Medeiros's default in the tax lien case. As previously mentioned, a year after the property was sold by the town at the June 1999 tax sale,[10] Medeiros properly received notice of Fiduciary's petition to foreclose his right of redemption in Superior Court. As was suitably noted in the trial justice's written decision, "Medeiros failed to answer or appear to assert any claim to an interest in the property[,]" thus leading to the default judgment entered against him. This failure to answer the petition to foreclose his right of redemption is fatal to his current appeal.

## A

## Controlling Statutes

■■ We are mindful that "[a] tax sale foreclosure proceeding 'is a unique procedure created by statute for a limited purpose; to provide a forum for the exercise of the right to redeem the subject land.'" *ABAR Associates v. Luna*, 870 A.2d 990, 994 (R.I.2005) (quoting *Pratt v. Woolley*, 117 R.I. 154, 157, 365 A.2d 424, 426 (1976)). In the past, this Court has acknowledged that because of a property owner's disproportionate loss, "[l]egislatures and courts have acted to ameliorate the severity of tax forfeitures." *Id.* (quoting *Albertson v. Leca*, 447 A.2d 383, 388 (R.I.1982)). "We also have recognized, however, that the Rhode Island tax statute 'strikes a fair balance between the interests of the government and private property rights—the state may move quickly to obtain by sale the taxes due, but the owner has ample

---

10. As required by G.L.1956 § 44–9–25, which reads in pertinent part:

"(a) After one year from a sale of land for taxes, * * * whoever then holds the ac-

quired title may bring a petition in the [S]uperior [C]ourt for the foreclosure of all rights of redemption under the title."

opportunity to redeem his real estate.'" *Id.* (quoting *Albertson,* 447 A.2d at 388). Furthermore, we reiterate that "one of the goals of the tax sale statute is to 'afford a measure of stability to tax titles.'" *Id.* (quoting *Picerne v. Sylvestre,* 122 R.I. 85, 89, 404 A.2d 476, 478 (1979)). It is through this lens that we must view the present case.

Three specific statutory provisions pertaining to tax sales are paramount in this appeal. Section 44–9–24 provides in relevant part:

"The title conveyed by a tax collector's deed *shall be absolute* after foreclosure of the right of redemption by decree of the [S]uperior [C]ourt * * *. * * * Furthermore, the action to vacate shall only be instituted for inadequacy of notice of the petition amounting to a denial of due process or for the invalidity of the tax sale because the taxes for which the property was sold had been paid or were not due and owing because the property was exempt from the payment of such taxes." (Emphasis added.)

Section 44–9–30 provides that once a default has been entered, as it was in the case at bar, "a decree shall be entered which *shall forever bar* all rights of redemption." (Emphasis added.) Moreover, § 44–9–31 provides in pertinent part:

"If a person claiming an interest desires to raise any question concerning the validity of a tax title, the person shall do so by answer filed in the proceeding on or before the return day, or within that further time as may on motion be allowed by the court, *or else be forever barred from contesting or raising the question in any other proceeding.* He or she shall also file specifications setting forth the matters upon which he or she relies to defeat the title; and unless the specifications are filed, all questions of the validity or invalidity of

the title, whether in the form of the deed or proceedings relating to the sale, *shall be deemed to have been waived."* (Emphases added.)

In this case, the record indicates that after Medeiros was properly noticed of the tax sale and of the hearing to foreclose his right of redemption, he failed to file an answer or to assert any claim of interest in the property. Therefore, once Medeiros defaulted and a final decree entered against him on July 28, 2000, the tax deed was absolute as to Fiduciary, and Medeiros was forever barred from any subsequent claim. All questions by Medeiros concerning the validity of the title were deemed waived—including the right to notice of both Fiduciary's September 2002 motion to vacate and the May 31, 2005 stipulation order.

## B

### Prior Precedent

On multiple occasions, this Court has held that "upon notice of a petition for foreclosure of the right of redemption, the failure by one who owns an interest in real estate to file an answer or specifications on or before the return day forever bars that party from later contesting the validity of the tax title." *ABAR Associates,* 870 A.2d at 995 (quoting *Kildeer Realty v. Brewster Realty Corp.,* 826 A.2d 961, 967 (R.I.2003)).

In *Kildeer Realty,* 826 A.2d at 963, a parcel of real estate was sold at a tax sale. The defendant property owner, Brewster Realty, was not properly notified of the impending tax sale. *Id.* A year after the tax sale, the purchaser of the real estate, Kildeer Realty, filed a petition in Superior Court to foreclose all rights of redemption to the property. *Id.* Brewster Realty did receive notice of the petition, but failed to appear or object. *Id.* A final decree was entered, foreclosing all rights of redemp-

tion to the real estate. *Id.* Subsequently, Brewster Realty filed a motion to vacate the judgment, asserting the original tax sale was void for want of notice and that it was deprived of its property without due process. *Id.*

This Court in *Kildeer Realty*, 826 A.2d at 966, held that despite Brewster Realty not receiving notice of the impending tax sale, § 44–9–31 explicitly barred the defendant from contesting the validity of the tax title in any future proceeding because it was defaulted in the redemption foreclosure action. We reasoned that once a default was entered according to § 44–9–30, "a decree shall be entered which shall forever bar all rights of redemption[,]" and "any subsequent claims by Brewster Realty were forever barred." *Kildeer Realty*, 826 A.2d at 966; *see also ABAR Associates*, 870 A.2d at 996–97 (holding that it was improper to allow a party with a property interest to intervene after a final decree had been entered foreclosing all rights of redemption, despite that party not receiving any notice of the prior tax sale); *Norwest Mortgage, Inc. v. Masse*, 799 A.2d 259, 263 (R.I.2002) (holding that a creditor's noncompliance with § 44–9–31 prohibited the creditor from setting aside a tax sale, despite the fact that the tax sale occurred in violation of the automatic stay provisions of the bankruptcy code); *Picerne v. Sylvestre*, 113 R.I. 598, 602, 324 A.2d 617, 619 (1974) (recognizing the all-encompassing terms of "forever barred" and "in any other proceeding" in § 44–9–

31), *overruled on other grounds*, 122 R.I. 85, 404 A.2d 476 (1979). Thus, in the instant case, because Medeiros defaulted in the tax lien case, he is precluded from intervening in any subsequent claim to the property.

Accordingly, we agree with the trial justice's decision that because of the preceding authority, the January 2002 judgment failed to "re-vest" Medeiros with the property. The trial justice properly noted that because Medeiros "failed to answer or appear to assert any claim" in the tax lien case, "[t]he default judgment entered against Medeiros in [that] case terminated any interest he might have in the property." The trial justice was correct in finding that "[s]imply because the [January 2002 judgment] was sent to Medeiros as a courtesy" and erroneously "revested" title in Medeiros, the judgment was in error and "d[id] not change his status as [a] party in default." As a result, this Court considers the January 2002 judgment to be null and void. Furthermore, because the default against Medeiros in the tax lien case could not have been removed or set aside, Medeiros is unable to avail himself of the notice exception found in Rule 5(a).[11] Concerning Medeiros's due process argument, we also agree with the trial justice's finding that "Medeiros'[s] rights to due process were satisfied * * * when he was [given notice], and elected not to protect any interest he might have in the property."[12]

---

11. It is worthwhile to note that Medeiros defaulted a second time in the notice case. However, because § 44–9–31 specifically applies to parties contesting a tax title, we limit our analysis and holding in this case to Medeiros's default in the tax lien case.

12. We distinguish this case from the facts in *Sycamore Properties, LLC v. Tabriz Realty, LLC*, 870 A.2d 424 (R.I.2005), in which this Court held in favor of an aggrieved party that had been divested of property after a tax sale

and its right to redeem was foreclosed. In *Sycamore*, 870 A.2d at 428, we held that a property owner, after defaulting in the proceeding to foreclose its right of redemption, was nonetheless wrongly denied its due process rights because the notice given to the property owner of the pending tax sale was improper. By contrast, in the instant case, Medeiros was given adequate notice of both the tax sale and the petition to foreclose his right of redemption. *See also Jones v. Flow-*

As a policy matter, to allow a property to "re-vest" in a defaulted party after the final decree has been entered would result in "the purpose of achieving stabilization of tax titles [being] completely frustrated." *ABAR Associates*, 870 A.2d at 996. To so hold would only invite an unnecessary cascade of legal proceedings following a redemption foreclosure—as this case illustrates.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.

Justice ROBINSON did not participate.

*ers*, 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (holding that when "notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling [the] property").