**MYRAD PROPERTIES, INC., Petitioner,**

v.

**LASALLE BANK NATIONAL ASSOCIATION, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass–Through Certificates, Series 1997–C1, Robin Green, and Melissa Cobb, Respondents.**

No. 08–0444.

Supreme Court of Texas.

Argued March 31, 2009.

Decided Dec. 18, 2009.

Rehearing Denied Feb. 12, 2010.

Donald R. Taylor, Miguel Sergio Rodriguez, Taylor, Dunham and Burgess, L.L.P., Austin, for Petitioner.

Keith Miles Aurzada, Bryan Cave, LLP, Jay Lloyd Krystinik, Powell Goldstein LLP, Dallas, for Respondents.

William C. Lipsey, Hoelscher Lipsey & Elmore, PC, College Station, for Amici Curiae Bryan College Station Regional Association of Realtors and University Title Company.

Justin MacDonald, Hill Country Homebuilders Assoc., Kerrville, for Amicus Curiae pro se.

W. Barry Kahn, Hettig/Kahn Holdings, Inc., Houston, for Amicus Curiae pro se.

Gary Henley, Home Builders Assoc'n Greater Austin, Austin, for Amicus Curiae pro se.

James R. Gaines, Texas Landowners Council, Austin, for Amicus Curiae pro se.

Daniel J. Brustkern, Schaeffer & Brustkern, LLP, Austin, for Amicus Curiae Homebuilder's Assoc. Greater Austin.

Ted Hollen, Lago Vista, for Amicus Curiae Texas Landowners Council.

Celia C. Flowers, Flowers Davis, PLLC, for Amicus Curiae Texas Land Title Association.

Justice GREEN delivered the opinion of the Court.

In this foreclosure dispute, we must decide whether a correction deed may convey two properties when an unambiguous deed mistakenly conveyed only one. Because the particular correction deed at issue exceeds the narrow permissible scope of a correction deed, we hold that the correction deed was void and only one property was conveyed. We therefore reverse the judgment of the court of appeals. We then decide whether to rescind the mistaken deed because under the unique circumstances of this case, where the issue of rescission reaches us on cross-motions for summary judgment without factual dispute, we need not remand for further proceedings. Instead, we render judgment and order rescission of the mistaken deed.

## I

The undisputed facts show that Myrad Properties, Inc. financed two separate properties in Killeen for $1.05 million. An apartment complex stood on each, the La Casa Apartments on one, the Casa Grande Apartments on the other. Myrad executed a promissory note, which was secured by a deed of trust that covered both properties. LaSalle Bank National Association's predecessor in interest, which held the note as trustee for its investors, recorded the deed of trust. The deed of trust provided that, upon default, LaSalle's predecessor would have the right to sell the property through non-judicial foreclosure. After Myrad defaulted, LaSalle proceeded to foreclose.

A group of substitute trustees was appointed.[1] LaSalle directed them "to foreclose the lien of the Deed of Trust in accordance with its terms and the laws of the State of Texas," and cited to the recorded deed of trust. The substitute trustees posted notice of sale. In various parts, the notice referred both to the note and the recorded deed of trust, including a statement that "Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust." However, the notice's property description referred to Exhibit A, the only exhibit, which in turn described only the Casa Grande property.

At the auction, the substitute trustees read only the legal description of the Casa Grande property, while at the same time referring unspecifically to the property described in the deed of trust. LaSalle made the sole bid at the auction, bidding $978,000.00.[2] After the foreclosure sale, the

---

1. Although certain individual trustees performed the actions discussed here, we refer to the substitute trustees collectively throughout this opinion for ease of reference.

2. The parties dispute whether other potential bidders were present at the auction. Myrad contends that inadequate notice chilled potential bidding, which LaSalle contests. The parties also dispute whether the terms of the note were satisfied by this transaction, with

substitute trustees issued a deed to La-Salle, which LaSalle immediately recorded. The deed, in relevant part, states as follows:

> The undersigned Substitute Trustee, in consideration of the foregoing and of the payment of the Purchase Price, by the authority conferred on the undersigned Substitute Trustee by the Deed of Trust, GRANTS, SELLS, and CONVEYS to Grantee, its legal representatives, successors and assigns, the Property, together with, all and singular, the rights, privileges and appurtenances thereto, subject, subordinate and inferior to any senior encumbrances and other exceptions to conveyance and warranty in the Deed of Trust (the '*Permitted Exceptions*').

"Property" is defined in the substitute trustees' deed as "The real property described in *Exhibit A* attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust" (emphasis in original). Again, Exhibit A described only the Casa Grande property.[3]

Two days later Myrad filed this action seeking a temporary restraining order to prohibit LaSalle from filing a corrected deed covering the La Casa property. The district court entered the order, but dissolved it after a hearing, whereupon La-Salle recorded a correction deed including a description of both properties. Myrad then brought an action to quiet title and for a declaration that LaSalle owns only the Casa Grande property, while Myrad

owns La Casa free from encumbrance and is entitled to any surplus from the sale. Myrad also sought damages for breach of duty, alleging that the substitute trustees "breach[ed their] duties to Myrad by taking acts to file the [correction deed] . . . [which] was the proximate cause of damages," and similarly alleging that acts taken to file the correction deed amounted to conspiracy to breach such duties. LaSalle in turn sought a declaration that it now holds title to both properties, or in the alternative, LaSalle and the substitute trustees sought rescission of the conveyance from the substitute trustees to La-Salle. The parties then filed cross-motions for summary judgment on their declaratory claims and LaSalle's claim for rescission. LaSalle's motion also sought summary judgment on Myrad's claims for breach of duty and conspiracy. The trial court granted LaSalle's motion and entered final judgment that Myrad take nothing, declaring that the sale had conveyed title to both properties to LaSalle, and that the correction deed vested title in both properties. The court of appeals affirmed the judgment that LaSalle held title to both properties, affirmed that Myrad's breach of duty and conspiracy claims failed, and remanded on the fact question of whether Myrad is entitled to any surplus from the sale.[4] 252 S.W.3d 605, 622 (Tex.App.-Austin 2008).

## II

Rather than requiring that erroneous deeds be reformed or rescinded by

---

LaSalle seeking a declaration that La Casa remains subject to the note, while Myrad seeks a declaration of entitlement to surplus. As discussed below, we need not address these disputes.

**3.** While the parties disagree about whether the notice was ambiguous, neither asserts that the deed is ambiguous.

**4.** Myrad alleges in its final brief to this Court that LaSalle sold both properties while this petition was pending. This fact, if true, does not affect our analysis of any of the issues properly before us at this time.

judicial proceedings, we have long allowed agreeable parties to use correction deeds in limited circumstances.[5] *See Doty v. Barnard,* 92 Tex. 104, 47 S.W. 712, 713 (1898) (stating that use of a correction deed was proper "to correct the defects and imperfections of the deed above referred to, and had the same effect upon the rights of the parties that a judgment of court would have had"). But the proper use of a correction deed is narrow in scope. *See, e.g., Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 871 (Tex. App.-Dallas 2005, no pet.) ("A correction deed is filed for the sole purpose of correcting some facial imperfection in the title."). For instance, a correction deed may be used to correct a defective description of a single property when a deed recites inaccurate metes and bounds. *E.g., Doty,* 47 S.W. at 712 (enforcing a deed correcting an improper acreage description). Similarly, a correction deed may be used to correct a defective description of a grantor's capacity. *E.g., Humble Oil & Refining Co. v. Mullican,* 144 Tex. 609, 192 S.W.2d 770, 771–72 (1946) (enforcing a correction deed stating that a grantor was "community administrator" of an estate under the probate code, not "independent executor" as stated in the original deed). However, using a correction deed to convey an additional, separate parcel of land is beyond the appropriate scope of a correction deed. *See Smith v. Liddell,* 367 S.W.2d 662, 666 (Tex.1963) (refusing to enforce a correction deed purporting to convey a mineral interest in an additional 71.446–acre tract from a separate survey where the first deed mistakenly conveyed only an interest in a 152.11–acre tract); *cf. Sanborn v. Crowdus Bros. & Co.,* 100 Tex. 605, 102 S.W. 719, 720 (1907) (refusing to render judgment enforcing a corrected quitclaim deed where the mistaken quitclaim deed purported to release and convey additional lots not covered by a vendor's lien); *Halbert v. Green,* 156 Tex. 223, 293 S.W.2d 848, 852–53 (1956) (rejecting use of a correction deed to change the fractional interest of a mineral estate, or change a mineral interest to a royalty interest).

 Preserving the narrow circumstances for acceptable use of a correction deed is important because a proper correction deed may relate back to the date of the deed it corrects. *See Doty,* 47 S.W. at 714 ("All persons claiming [an interest] . . . by conveyance subsequent to the [first, mistaken] deed . . . are bound by the recitals contained in the latter [correction] deed, and could acquire no right under the [first, mistaken] deed . . . to land not embraced in the [correction] deed. . . ."); *Humble Oil,* 192 S.W.2d at 772–73 (stating that a delay rental deadline related back to the original deed); *see also Wilson v. Dearing, Inc.,* 415 S.W.2d 475, 479 (Tex. Civ.App.-Eastland 1967, no writ) ("The correction instrument related back to and became effective as of the time of the instrument it purported to correct."); *Adams,* 154 S.W.3d at 871 ("Ordinarily, a correction deed relates back to the date of the document that it purports to express more accurately."). To allow correction deeds to convey additional, separate properties not described in the original deed would introduce unwarranted and unnecessary confusion, distrust, and expense into the Texas real property records system. For example, it could require those who must rely on such records to look beyond the deed and research the circumstances of ownership to make sure that no convey-

---

5. LaSalle raised only a claim for rescission to this Court, not reformation. We thus reach no conclusion as to whether reformation would have been possible under the circumstances.

ance mistake such as that before us in this case was made, undermining the entire purpose of record notice. We hold that LaSalle's correction deed purporting to convey both properties was void as a matter of law.

## III

■■■ Myrad premised its claims for breach of duty and conspiracy on the filing of the correction deed. It pled these claims with conclusory allegations that the substitute trustees breached their duties to Myrad by filing the correction deed and that acts taken to file the correction deed amounted to conspiracy to breach such duties. Having held that the correction deed was void as a matter of law, we conclude that these claims are not sustainable. *Cf. Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 859 (Tex. 2000) (disposing of a breach of fiduciary duty claim that was premised entirely on a contract breach, upon holding that the breach of contract claim failed). Any duty imposed on the substitute trustees to conduct a fair foreclosure sale ran both to Myrad and LaSalle. *See Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex.1977) ("[A deed of trust trustee] must act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust."); *Tarrant Savings Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 476 (Tex.1965) (reviewing evidence of unfair or wrongful conduct in sale by substitute trustee to mortgagee). Even assuming that the substitute trustees owed a cognizable duty to Myrad that was breached by the act of filing the correction deed, Myrad has never explained what harm it allegedly suffered apart from the enforcement of the correction deed itself, which we have set aside as Myrad urged. Myrad also has not explained how filing this correction deed, while void, was an unlawful act, which is an element of a civil conspiracy claim. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex.2005). For these reasons, we hold that Myrad's claims for breach of duty and conspiracy fail.

## IV

■■■ LaSalle seeks to rescind the conveyance from the substitute trustees because of mistake in the original deed. When mistake is alleged, we may consider extrinsic evidence of intent in determining whether to enforce a deed. *See Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 524 (Tex.1982). Rescission is an available equitable remedy if mutual mistake is shown. *See A.L.G. Enters., Inc. v. Huffman*, 672 S.W.2d 230, 231 (Tex.1984) (per curiam) (remanding for trial on whether mutual mistake occurred). "Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990). "The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the [contract]." *Id.* Courts have awarded rescission to avoid unjust enrichment based on mistake. *E.g., Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (Tex.App.-Corpus Christi 1994, no writ).

LaSalle and the substitute trustees, as co-defendants, jointly counterclaimed to rescind the conveyance from the substitute trustees to LaSalle on the basis of their mutual mistake concerning the properties at issue. Myrad opposed this claim, although it was not a party to the conveyance, and moved for summary judgment. Soon after, LaSalle and the substitute trustees also jointly moved for summary judgment on this claim.

The lower courts did not reach the rescission claim. However, on cross-motions for summary judgment, the trial court granted, and the court of appeals affirmed, LaSalle's "declaratory claim that the correction deed vested title to both parcels in LaSalle." 252 S.W.3d at 619. The use of a correction deed to reform a mistaken deed necessarily implies a mutual mistake in the underlying instrument running contrary to the grantor's and grantee's intent. *Cf. Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex. 1987) ("The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument so that the instrument truly reflects the *original* agreement of the parties.") (emphasis in original). Thus, a fact-finding supporting a decision to enforce a correction deed would be identical to the finding required for equitable rescission.

The correction deed at issue made a single change: the description of two properties instead of one. Thus, in entering and affirming judgment enforcing the correction deed, the trial court and court of appeals necessarily found that a mistake existed in the substitute trustees' deed, the intent of LaSalle and the substitute trustees being to convey both properties covered by the deed of trust. *Cf. In re Weekley Homes, L.P.,* 295 S.W.3d 309, 316 (Tex.2009) (concluding that the trial court's decision to order forensic examination implied a finding that evidence was not reasonably available and *required* extraordinary steps for retrieval and production); *In re Lynd Co.,* 195 S.W.3d 682, 686 (Tex.2006) (holding that absent a trial court's express finding that a party received late notice of the judgment, a finding should be implied by the court's granting of a motion for new trial). The substitute trustees and LaSalle presented evidence of their mutual mistake, such as the instrument directing the substitute trustees to foreclose on the deed of trust covering both properties and the amount of LaSalle's bid, in addition to the plain fact that the substitute trustees delivered and LaSalle accepted the correction deed. Myrad, as a third party to the conveyance, has presented no contrary evidence that might raise a fact question on intent or mistake to support its summary judgment motion on rescission, or defend against LaSalle's. Indeed, in its summary judgment motion, Myrad did not argue against mistake, asserting instead that LaSalle showed "affirmation or ratification of the contract." [6] It follows that because of the trial court's implied finding of mutual mistake, supported by all of the evidence, equitable rescission is an available remedy.

We are not blind to the equities of this dispute. LaSalle was entitled to be made whole as holder of the note from Myrad, and in trying to acquire two properties LaSalle received only one by mistake. Although we cannot enforce the correction deed, we recognize that enforcement of the original substitute trustees' deed would result in one of two things happening. Should LaSalle remain able to foreclose on the La Casa property under the note after accounting for its payment, requiring someone to pay a second time for that property will entitle Myrad to a windfall from any surplus beyond what Myrad owes on the note. Likewise, if the terms of the note are satisfied, Myrad will stand as owner of the La Casa property free from encumbrance despite its default. Myrad has never disputed this, and indeed

---

6. We note that LaSalle, by attempting to use a correction deed, can hardly be said to have affirmed or ratified the mistaken deed.

argues for just such a result. We conclude that Myrad will be unjustly enriched if the mistaken deed to LaSalle is enforced.

 Where cross-motions for summary judgment exist on an issue absent factual dispute, we may render the judgment the lower courts should have rendered. *See Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *see also* Tex.R.App. P. 60.2(c) (providing that this Court may "render the judgment that the lower court should have rendered"). Each party's motion for summary judgment expressly argued LaSalle's alternative equitable rescission claim. Accordingly, we need not remand on this issue under the circumstances of this case. Rescission is available based on the trial court's necessary finding that a mutual mistake existed in the conveyance to LaSalle from the substitute trustees, supported by all the evidence. To avoid an unjust enrichment, we rule in favor of LaSalle and render judgment on its claim for rescission.

We need not reach the question of whether notice was adequate, then, or chilled potential bidding, because rescission of the deed is proper regardless. Still, we are confident that a fresh foreclosure sale would address Myrad's concerns about adequate notice to the public. The dispute over any surplus owed to Myrad from the mistaken sale is also thus resolved.

## V

In conclusion, we hold that a correction deed may not be used to correct a mistake of omitting an entire second property. The correction deed in this case was therefore void. We reverse the court of appeals' judgment that LaSalle holds title to both properties. We agree, however, that all the evidence indicates a mutual mistake in the substitute trustees' deed, contrary to the clear intent of the grantor and grantee. Enforcing this mistaken deed would unjustly enrich Myrad. Accordingly, we render judgment for LaSalle on its claim for rescission of the substitute trustees' deed.