**Supreme Court**

No. 2011-324-Appeal.
(PC 10-2528)

Mortgage Electronic Registration Systems,   :
Inc. et al.

v.                 :

Verissimo DePina et al.        :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Mortgage Electronic Registration Systems,    :
Inc. et al.

v.                      :

Verissimo DePina et al.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The defendant, Amy Realty,[1] appeals from the Superior Court's grant of partial summary judgment in favor of the plaintiffs, Mortgage Electronic Registration Systems, Inc. (MERS), Citigroup Global Markets Realty, and Regions Bank d/b/a Regions Mortgage (collectively, plaintiffs). On appeal, the defendant argues that the Superior Court erred in vacating a final decree foreclosing the plaintiffs' rights of redemption in a Central Falls property that had been sold to the defendant at a tax auction and in declaring a deed conveying that property to be null and void. The defendant contends, rather, that the Superior Court misconstrued G.L. 1956 § 44-9-24[2] and that, under §§ 44-9-30 and 44-9-31 the plaintiffs are barred from redeeming the property and from raising defects in the tax sale and

---

[1] Although several defendants were named below, only Amy Realty has appealed the Superior Court's judgment.

[2] General Laws 1956 § 44-9-24 provides that a party with an interest in a property sold at a tax sale may institute a separate action seeking to vacate a final decree of foreclosure within one year of its issuance, but only

> "for inadequacy of notice of the petition amounting to a denial of due process or for the invalidity of the tax sale because the taxes for which the property was sold had been paid or were not due and owing because the property was exempt from the payment of such taxes."

foreclosure proceedings. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Procedural History

In January 2008, the Pawtucket Water Supply Board (PWSB) mailed a notice to Verissimo DePina informing him that the water bill on his property located at 18 Perry Street in Central Falls was past due, and that the PWSB would move forward with a water lien sale unless payment was received or an alternative arrangement was negotiated.[3] In April 2008 (apparently having received no response to the first notice), the PWSB sent DePina a second notice of the sale informing him that his property at 18 Perry Street would be advertised for a tax sale on May 6, 2008 and that it would be sold at public auction on May 29, 2008.[4] Both notices listed the property to be sold as 18 Perry Street, Assessor's Plat No. 5, lot No. 486 (Lot 486), even though DePina's property was in fact Assessor's Plat No. 5, lot No. 456 (Lot 456). The PWSB also publicly advertised the sale of Lot 486 pursuant to § 44-9-9.

At the time these notices were sent, MERS (as nominee for lenders Citigroup Global Markets Realty and Regions Bank) held first and second mortgages on the property, which were appropriately recorded in the land evidence records. It is undisputed that, notwithstanding the requirement of § 44-9-11(a) that mortgagees of record receive notice at least twenty days in

---

[3] There is some dispute as to the correct street address of DePina's property. The PWSB's records refer to the property as "18 Perry Street," but at least one mortgage document lists the property as "20 Perry Street." However, given the other, more significant deficiencies in the way that the property was listed on the operative documents, we need not pass on whether this discrepancy has any impact on the tax sale and subsequent foreclosure.

[4] Section 44-9-10(a) requires that notice of a tax sale be sent both "to the street address of the real estate liable for payment of taxes, and, if different, to the taxpayer's address listed with the tax assessor's office of the city or town where the real estate is located." DePina's mailing address on file with the PWSB was in Dorchester, Massachusetts, but it appears that only the first of the two notices was sent to his Dorchester address.

advance of a tax sale, plaintiffs did not receive any notice. In addition to DePina, however, Raquel Valdez (the record owner of Lot 486) and the mortgagees of record of Lot 486 received notice of the sale.

On May 29, 2008, the PWSB auctioned the lot advertised in the newspaper as "Plat 5, Lot 486, taxed to Verissimo DePina," for $2,027.81. Subsequently, the PWSB issued a deed purportedly conveying "all of the right, title and interest of the said Raquel Valdez, Bank of America, N.A., and Verissimo Depina * * * in and to that certain tract or parcel of land * * * designated as Plat 5, Lot 486" to Amy Realty. The parties do not dispute that the tax deed was recorded within sixty days of the sale, as is required by § 44-9-12(a). When Lot 486 was not redeemed within one year, Amy Realty initiated foreclosure proceedings pursuant to § 44-9-25(a). However, after obtaining a title report and sending notice of the foreclosure petition to various parties, Amy Realty received a telephone call from Valdez, the record owner of Lot 486, who asserted that her water bill with the PWSB was current. Upon consulting with the PWSB, Amy Realty became aware that the property that the PWSB had intended to auction (Lot 456) had been mistakenly listed as "Lot 486" on the tax sale notices and deed. To correct this incongruity, Amy Realty sought and obtained a "corrective" deed from the PWSB purportedly conveying "all of the right, title and interest of the said Raquel Valdez, Bank of America, N.A., and Verissimo Depina * * * in and to that certain tract or parcel of land * * * designated as Plat 5, Lot 456," and that deed was recorded in September 2009. Additionally, Amy Realty prepared a redemption deed for Valdez, reconveying Lot 486 to her so that there would be no cloud on her title. It is undisputed that neither Raquel Valdez nor Bank of America ever held an interest in Lot 456.

- 3 -

Amy Realty's representative gave deposition testimony that, at the time of the tax sale, he was under the impression that he had bid on and purchased Lot 486, not Lot 456, and that until Valdez contacted him, he was not aware of the discrepancy as to the lot numbers. Additionally, he acknowledged that, aside from DePina, the parties with actual interests in Lot 456 (namely, plaintiffs) did not receive notice of the sale.

Thereafter, Amy Realty filed an amended petition to foreclose, this time on Lot 456, and sent notice to each of the parties with an interest in Lot 456, including plaintiffs.[5] However, plaintiffs did not respond; and, in December 2009, a final decree was entered foreclosing plaintiffs' rights of redemption in Lot 456.

In April 2010, plaintiffs filed a complaint seeking injunctive and declaratory relief under § 44-9-24. Specifically, plaintiffs urged the Superior Court to vacate the final decree of foreclosure, alleging that the corrective deed changing the lot number from 486 to 456 was invalid and that this infirmity rendered the foreclosure decree void.[6] Amy Realty answered the complaint, and the parties proceeded with discovery.[7] In March 2011, plaintiffs moved for summary judgment on their injunctive and declaratory relief count. Amy Realty objected. After hearing arguments from the parties on April 26, 2011, the Superior Court granted summary judgment for plaintiffs, concluding that because the corrective deed was filed more than a year after the tax sale, it did not comply with § 44-9-12, which requires that a tax-sale deed be filed within sixty days of the sale. Additionally, the hearing justice observed that Lot 486 (rather than

---

[5] The plaintiffs acknowledge that they received this notice of Amy Realty's amended petition to foreclose on Lot 456.

[6] The plaintiffs later amended their complaint to plead tortious interference with contractual relations and deprivation of federal civil rights. However, the Superior Court's judgment did not resolve these later-added counts, and they are not at issue in this appeal.

[7] The plaintiffs named other defendants in this action in addition to Amy Realty. However, because only Amy Realty is party to this appeal, we confine our recitation of the case's procedural history to only that portion pertaining to Amy Realty.

- 4 -

Lot 456) was sold at the tax sale even though the only outstanding water bill in the case was on Lot 456, and thus he held that § 44-9-24 permitted the Superior Court to vacate the final foreclosure decree. Finally, at a hearing on June 7, 2011, the hearing justice clarified that, in addition to the reasons he noted at the April 26 hearing, he also believed that there was a "due process issue" with the way the tax sale and foreclosure had proceeded. Amy Realty timely appealed.

## II

## Standard of Review

"The grant of a motion for summary judgment is reviewed by this Court <u>de novo</u>, 'employing the same standards and rules used by the hearing justice.'" <u>Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc.</u>, 45 A.3d 571, 574 (R.I. 2012) (quoting <u>Generation Realty, LLC v. Catanzaro</u>, 21 A.3d 253, 258 (R.I. 2011)). Thus, we will affirm a grant of summary judgment if, in "reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." <u>Id.</u> (quoting <u>Generation Realty, LLC</u>, 21 A.3d at 258).

This Court also reviews questions of statutory construction <u>de novo</u>. <u>Mendes v. Factor</u>, 41 A.3d 994, 1002 (R.I. 2012). "As a general matter, the authority for the sale of real estate for delinquent taxes 'must be found in the statutes and such statutes will not be enlarged by judicial construction but will be strictly construed in favor of the owner.'" <u>140 Reservoir Avenue Associates v. Sepe Investments, LLC</u>, 941 A.2d 805, 810 (R.I. 2007) (quoting <u>First Bank & Trust Co. v. City of Providence</u>, 827 A.2d 606, 610 (R.I. 2003)).

## III

## Discussion

Amy Realty argues that the Superior Court erred in vacating the foreclosure decree because, once the foreclosure decree was entered, plaintiffs were "forever barred" from seeking redemption or challenging the validity of the proceeding under the provisions of §§ 44-9-30 and 44-9-31. Additionally, Amy Realty posits that § 44-9-24 does not apply in this case because minimum due-process requirements were met when plaintiffs received notice of the foreclosure proceeding, the "single digit" error in the tax sale notices listing the incorrect lot number was neither substantial nor misleading, and a water bill was actually due and owing for Lot 456 (the property for which Amy Realty obtained a corrective deed and upon which it ultimately foreclosed). Finally, Amy Realty suggests that, because DePina owned only one property in Central Falls and the tax sale notices listed DePina as record owner of the property to be sold, it should have been obvious to plaintiffs, had they conducted due diligence, that the property referenced in the tax sale advertisement and notices was actually Lot 456, notwithstanding the fact that the notices (which plaintiffs never received) described the property as Lot 486. The plaintiffs respond that the hearing justice correctly applied § 44-9-24's "safety valve" both in concluding that taxes were not owed on Lot 486 (the property actually sold at the tax auction) and that their due-process rights were violated here because they did not receive proper notice of the tax sale.

The procedure for tax sales, redemptions, and foreclosures in Rhode Island is set forth in a series of statutory provisions. See chapter 9 of title 44. We have noted that, "[b]ecause tax sales 'are or may be * * * penal in effect,' * * * '[l]egislatures and courts have acted to ameliorate the severity of tax forfeitures' in light of the 'inequity of the owner's inordinate

- 6 -

loss.'" <u>ABAR Associates, a RIGP v. Luna</u>, 870 A.2d 990, 994 (R.I. 2005) (quoting <u>Albertson v. Leca</u>, 447 A.2d 383, 388 (R.I. 1982)). Thus, we have observed that Rhode Island's statutory scheme "strikes a fair balance between the interests of the government and private property rights—the state may move quickly to obtain by sale the taxes due, but the owner has ample opportunity to redeem his real estate." <u>Id.</u> (quoting <u>Albertson</u>, 447 A.2d at 388). We also recognize that a concurrent goal of the tax sale statute is to "afford a measure of stability to tax titles." <u>Id.</u> (quoting <u>Picerne v. Sylvestre</u>, 122 R.I. 85, 89, 404 A.2d 476, 478 (1979)).

To resolve the issues raised in this appeal we must examine several intertwined provisions of Rhode Island's tax sale statutes. First, § 44-9-11(a) requires that any mortgagee whose interest is recorded ninety days before the date of the tax sale receive notice of the tax sale by registered mail at least twenty days in advance of the sale. Additionally, § 44-9-11(c) provides that, once a petition for a final decree of foreclosure has been filed, a mortgagee entitled to notice of the tax sale "must raise the notice defense * * * or be estopped from alleging lack of notice in any action to vacate a final decree * * *."

Section 44-9-12(a) provides that, following a tax sale, the tax sale deed must be recorded within sixty days, or it is invalid. During the one-year period following a tax sale, a person with an interest in the property (including a mortgagee) may redeem the property by tendering to the purchaser the purchase price as well as fees, taxes, and other penalties. <u>See</u> §§ 44-9-21 and 44-9-25(a). After one year has passed without redemption, § 44-9-25(a) permits the purchaser to file a petition in the Superior Court seeking to foreclose all rights of redemption. Prior to foreclosure, the purchaser must send notice of the foreclosure petition to all parties with an interest in the property, including the mortgagees of record, and any interested party may seek to

redeem the property by filing an answer and an offer to redeem on or before the return day.[8] See §§ 44-9-27(a) and 44-9-29. If there is no redemption within that timeframe, "a decree shall be entered which shall forever bar all rights of redemption." Section 44-9-30.

A final foreclosure decree carries with it significant consequences for any party who had an interest in the property prior to the tax sale: § 44-9-24 provides that "title conveyed by a tax collector's deed shall be absolute after foreclosure of the right of redemption," and it permits an interested party to challenge the foreclosure within one year of the decree, but only on the grounds that there was

> "inadequacy of notice of the petition amounting to a denial of due process or for the invalidity of the tax sale because the taxes for which the property was sold had been paid or were not due and owing because the property was exempt from the payment of such taxes." Id.

Moreover, § 44-9-31 makes clear that

> "If a person claiming an interest desires to raise any question concerning the validity of a tax title, the person shall do so by answer filed in the proceeding on or before the return day, or within that further time as may on motion be allowed by the court or else be forever barred from contesting or raising the question in any other proceeding."

Finally, § 44-9-35 provides that "[n]o tax title shall be held to be invalid by reason of any error or irregularity which is neither substantial nor misleading * * *."

This Court has recognized the finality that Rhode Island's tax foreclosure procedure provides to purchasers, and we have consistently upheld the strict bar to tax sale challenges erected by §§ 44-9-30 and 44-9-31 when notice of the foreclosure petition was proper. We have repeatedly held that "upon notice of a petition for foreclosure of the right of redemption, the

---

[8] Section 44-9-28 requires that the return day be at least twenty days after the "actual issuance of notice" to interested parties.

failure by one who owns an interest in real estate to file an answer or specifications on or before the return day forever bars that party from later contesting the validity of the tax title," because "once a 'foreclosure [of redemption] decree has been entered, the title conveyed by the tax collector's deed becomes absolute.'" Kildeer Realty v. Brewster Realty Corp., 826 A.2d 961, 967 (R.I. 2003) (quoting Picerne v. Sylvestre, 113 R.I. 598, 600, 324 A.2d 617, 618 (1974)). For example, when a property owner did not receive notice of a tax sale because its recently recorded interest was not uncovered by a title search, but it did receive notice of the foreclosure petition and failed to respond, we held that it was barred by §§ 44-9-30 and 44-9-31 from seeking to vacate the foreclosure decree on the basis of defects at the tax sale stage. Kildeer Realty, 826 A.2d at 963, 966-67. In particular, we concluded that

> "the explicit language of [§§ 44-9-30 and 44-9-31 is] controlling in this case; and any subsequent claims by [the owner] were forever barred. Any previous defects in the notice procedure of the tax sale were negated by [the owner's] subsequent failure to answer or appear upon notice of the petition to foreclose its rights of redemption. We deem [the owner's] failure to answer on or before the return day to be fatal to its appeal." Kildeer Realty, 826 A.2d at 966-67.

Our case law has consistently prevented those who previously held an interest in property sold at a tax sale from attacking a final decree of foreclosure when they have been properly noticed of the foreclosure proceedings but have failed to take action prior to the return day to protect their redemption rights. See Medeiros v. Bankers Trust Co., 38 A.3d 1112, 1113-14, 1119 (R.I. 2012) (holding that, when a property owner who had received notice of the tax sale and foreclosure petition failed to answer the foreclosure petition, he was barred from subsequently claiming an interest in the property); ABAR Associates, 870 A.2d at 991, 992, 996, 997 (concluding that the holder of an unrecorded interest who was not entitled to receive notice of the tax sale or

foreclosure petition could not intervene in a subsequent challenge to the final decree barring his right to redeem).

The plaintiffs urge us to apply our holding in Sycamore Properties, LLC v. Tabriz Realty, LLC, 870 A.2d 424 (R.I. 2005), to the issues at bar. There we held that, under an earlier version of § 44-9-24, when a property owner who did not receive notice of the tax sale but did receive notice of the foreclosure petition (through an agent) failed to answer the foreclosure petition, he was not barred from bringing a separate action to assert his rights to the property. Sycamore Properties, LLC, 870 A.2d at 425, 428. At that time, § 44-9-24 permitted the Superior Court to vacate a foreclosure decree when there was an "inadequacy of notice amounting to a denial of due process." Sycamore Properties, LLC, 870 A.2d at 427 (quoting § 44-9-24). We noted that the phrase "inadequacy of notice" was "susceptible to three interpretations: inadequacy of notice of the tax sale; inadequate notice of the foreclosure petition; or both." Id. at 428. We observed that "§ 44-9-24 operates as a 'safety valve' for taxpayers who have lost their right of redemption because of an invalid tax sale, notwithstanding noncompliance with § 44-9-31," and we concluded that the property owner was not barred from challenging the final decree of foreclosure on the grounds that notice of the initial tax sale was inadequate. Sycamore Properties, LLC, 870 A.2d at 426, 428. However, as Amy Realty correctly points out, § 44-9-24 has since been amended, and the operative phrase—"inadequacy of notice amounting to a denial of due process"—now reads, "inadequacy of notice of the petition amounting to a denial of due process." See § 44-9-24, as amended by P.L. 2006, ch. 537, § 4 (emphasis added). Amy Realty argues that, by adding the term "petition" to the statute, the General Assembly restricted notice challenges to only those situations in which an interest holder did not receive notice of the foreclosure petition itself, thereby delimiting this Court's broader interpretation in Sycamore.

- 10 -

Although the General Assembly's post-<u>Sycamore</u> amendments may have significantly narrowed the notice-based "safety valve" of § 44-9-24, the statute retains a second avenue through which an interested party may attack a tax sale following a final decree of foreclosure. An action to vacate may also be instituted "for the invalidity of a tax sale because the taxes for which the property was sold had been paid." Section 44-9-24. Here, Amy Realty did not dispute that Valdez was current on her water bill for Lot 486, the property purportedly sold at the tax sale. The hearing justice concluded, as one basis for his decision, that taxes were not due and owing on the property sold at the tax auction (Lot 486), and thus he permitted plaintiffs to challenge the tax sale's validity under § 44-9-24 notwithstanding the provisions of §§ 44-9-30 and 44-9-31.

Amy Realty maintains that the corrective deed changing the lot number from 486 to 456 obviates this deficiency because it relates back to the date of the tax sale, such that the law deems Lot 456 to have been the property sold at the tax sale. Thus, Amy Realty's title to Lot 456 hinges on the validity of the corrective deed purporting to alter the lot number of the property auctioned at the tax sale. Amy Realty seeks to minimize the error as a "typo," perhaps similar to a misspelling in the grantee's name, a slight mistake in a deed's expression of metes and bounds, or any other clerical error that may be rectified simply by obtaining a corrective deed. However, we are of the opinion that to describe this discrepancy in lot numbers as a mere "typo" grossly mischaracterizes the nature and import of the error; not only did this mistake cause the PWSB to notice incorrect parties, but it also caused the wrong lot to be sold at auction.

It does not appear that we have previously been called upon to determine which types of errors may be rectified through a corrective tax sale deed, but the weight of authority suggests that corrective deeds may not be used to fix such fundamental errors as selling the incorrect lot at

a tax sale. We find the Texas Supreme Court's well-reasoned opinion in <u>Myrad Properties, Inc.</u> <u>v. LaSalle Bank National Association</u>, 300 S.W.3d 746 (Tex. 2009), to be instructive on this point. There, a trustee for the beneficiaries of a deed of trust brought an action to foreclose on two apartment complexes owned by the borrower. <u>Id.</u> at 748. The trustee, intending to purchase both properties, made the sole bid at the foreclosure sale. <u>Id.</u> at 748-49. However, because of an apparent mistake at the sale, only one of the two properties actually was sold and the resulting deed conveyed only that single property. <u>Id.</u> at 749. Upon realizing the mistake, the trustee obtained a "correction deed" purporting to convey both properties. <u>Id.</u> The Texas Supreme Court held that a corrective deed could not be used to correct such an error, noting that, while it "ha[s] long allowed agreeable parties to use correction deeds in limited circumstances," nonetheless, "the proper use of a correction deed is narrow in scope." <u>Id.</u> at 750. Specifically, the court explained that, although corrective deeds may be appropriate to rectify inaccuracies in the expression of metes and bounds of a single property or insufficient descriptions indicating a grantor's capacity, "using a correction deed to convey an additional, separate parcel of land is beyond the appropriate scope of a correction deed." <u>Id.</u> The court reasoned that, to maintain the integrity of the real property system, corrective deeds are appropriate only under a limited set of circumstances:

> "Preserving the narrow circumstances for acceptable use of a correction deed is important because a proper correction deed may relate back to the date of the deed it corrects. * * * To allow correction deeds to convey additional, separate properties not described in the original deed would introduce unwarranted and unnecessary confusion, distrust, and expense into the Texas real property records system. For example, it could require those who must rely on such records to look beyond the deed and research the circumstances of ownership to make sure that no conveyance mistake such as that before us in this case was made, undermining the entire purpose of record notice." <u>Id.</u> at 750-51.

- 12 -

Thus, the court held the corrective deed purporting to convey both lots when only one was sold at the foreclosure sale to be void.  Id. at 751.

Other persuasive authority also supports the conclusion that a corrective deed may not be used to correct an error as fundamental as conveying the wrong lot.  For example, Corpus Juris Secundum recognizes the validity of corrective deeds when used to rectify minor irregularities, but cautions that corrective deeds may not be employed when doing so would prejudice the rights of third parties:

> "Where there is no fraud and the rights of third persons have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties. This rule applies to a mistake in the description of the property, or to omission of conditions by mutual mistake, or to a deed executed and antedated to replace a destroyed instrument, even though done without the grantee's knowledge.
>
> "* * *
>
> "Ordinarily, a correction deed relates back to the date of the document that it purports to express more accurately, as long as no new rights are thereby affected.  However, as against third persons, an alleged defective deed can be cured only by a bill in equity, and not by a confirmation assuming to relate back to the original deed."
> 26A C.J.S. Deeds § 40 at 66-67, 68 (2011).

Here, the mistake at the tax auction and in the resulting deed was far more fundamental than a simple misspelling of a party's name or a slightly incorrect property description: the initial tax deed here purported to convey an entirely different property than the property for which a water bill was due and owing.  In the original deed, the property conveyed was described only as "Plat 5, Lot 486," and the parties whose interests were being transferred included Raquel Valdez and Bank of America, as well as Verissimo DePina.[9]   The weight of authority indicates that a

---

[9] It is true that the deed stated that the PWSB did "assess upon Verissimo Depina as a portion of said water charges and assessments upon Plat 5, Lot 486, being property located at 18 Perry

- 13 -

corrective deed is insufficient to correct an error of this magnitude. We agree with the hearing justice that the original tax deed purported to convey Lot 486, and that the corrective deed, relating to an entirely different parcel of land, Lot 456, was null and void because it was not recorded within sixty days of the tax sale as required by § 44-9-11.

Additionally, given the policies underlying the tax sale statute, we find Amy Realty's argument that the corrective deed cured all deficiencies to be untenable under the facts of this case. As we have previously noted:

> "Historically, * * * our law has strongly disfavored forfeitures of real property.
> "* * *
> "Legislatures and courts have acted to ameliorate the severity of tax forfeitures. Although tax-sale statutes furnish a strong arm with which to enforce the government's right to its revenues, the statutes also protect the right of property owners to their real estate. * * * Because the right of redemption is a valuable property right, * * * and the potential loss to the owner is grave, the courts have as a matter of general policy interpreted tax statutes liberally in favor of redemption." Albertson, 447 A.2d at 388.

We also observe that § 44-9-24 looks to whether the property sold at the "tax sale" owed any taxes, rather than whether the property ultimately foreclosed upon owed taxes. (Emphasis added.) Thus by the statute's express terms, it is immaterial whether Amy Realty foreclosed on a property with an outstanding water bill, because the property it actually purchased at the tax sale was current on its bill; and, as we have discussed supra, the corrective deed obtained in this case was null and void.

Finally, Amy Realty argues that the errors in the tax sale notices listing the property as Lot 486 rather than Lot 456 were cured by § 44-9-35 because they were "neither substantial nor misleading" and could have been overcome by plaintiffs had they exercised ordinary diligence.

---

Street, Central Falls." This language appears, however, in a recital or "whereas" clause of the deed and not in the operative clause that purports to actually convey the property.

- 14 -

Essentially, Amy Realty asserts that because the tax sale notices listed DePina as the record owner of the property to be sold and DePina owned only one property in Central Falls, if plaintiffs had thoroughly investigated the matter, they would have surmised that the PWSB intended to sell Lot 456, DePina's only Central Falls property, rather than Lot 486, which was the property actually listed on the tax sale notice. Thus, Amy Realty argues, § 44-9-35 applies to resolve the discrepancy. In support of this argument, Amy Realty cites to Murray v. Schillace, 658 A.2d 512, 513, 514 (R.I. 1995), in which a mortgagee sought to vacate a final decree of foreclosure because tax sale notices (which were sent to the proper parties) misspelled the owner's name as "Marc Shillace" when it should have been spelled "Marc Schillace." There, we concluded that the misspelling was "neither substantial nor misleading" under § 44-9-35, reasoning that the mistake "could have been overcome with ordinary diligence." Murray, 658 A.2d at 514. In particular we cautioned that, "when a bank receives a certified letter legally describing a piece of property and when, in addition, twelve out of thirteen letters of the mortgagor's name are correct, notice should not be disregarded when foreclosure on the piece of property is at stake." Id. In contrast, here the error with the lot number caused incorrect parties to be noticed of the tax sale, and thus plaintiffs never received any type of notice that would prompt them to conduct further investigations. We conclude that, under the circumstances presented here, the error was both substantial and misleading vis-à-vis plaintiffs and, therefore, § 44-9-35 did not prevent the court from vacating the final foreclosure decree.

For the foregoing reasons, we are of the opinion that the plaintiffs were entitled to avail themselves of the "safety valve" of § 44-9-24. See Sycamore, 870 A.2d at 426. The corrective deed obtained in this case did not resolve the fundamental flaw present in the tax sale—namely, that a property on which no taxes were due was auctioned. Additionally, because the error

- 15 -

present here was both substantial and misleading, Amy Realty may not invoke § 44-9-35 to sanitize this flawed tax sale and foreclosure proceeding. The collector's deed conveyed title only to Lot 486, and it is undisputed that Lot 486 owed nothing to the PWSB. We therefore conclude that, pursuant to § 44-9-24, the final foreclosure decree may be vacated "for the invalidity of the tax sale because the taxes for which the property was sold had been paid * * *."

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.


**TITLE OF CASE:**  Mortgage Electronic Registration Systems, Inc. et al. v. Verissimo DePina et al.

**CASE NO:**  No. 2011-324-Appeal.
(PC 10-2528)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  April 12, 2013

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Robert K. Taylor, Esq.

For Defendant Amy Realty:  Patrick T. Conley, Esq.