

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00155-CV

_____

WELLS FARGO BANK, N.A., Appellant

V.

JOSE S. RODRIGUEZ, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-314048-19

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Wells Fargo Bank, N.A. sued Appellee Jose S. Rodriguez over roughly $6,050 in overdue credit-card debt, alleging breach of contract and account stated and pleading for its attorney's fees and costs. After both sides moved for summary judgment, the trial court entered orders denying the Bank's traditional motion and granting Rodriguez's no-evidence motion.

In two issues, the Bank challenges both rulings. Rodriguez did not file an appellee's brief. Because the Bank established Rodriguez's breach of contract and thus its right to attorney's fees as a matter of law, we will reverse and render judgment in part. But because the Bank did not prove its reasonable and necessary attorney's fees as a matter of law, we will reverse and remand in part.

### Facts

We note at the outset that under Rule 38.1(g) of our appellate procedural rules, Rodriguez's failure to file a brief has consequences: so long as the Bank's factual statements are supported by record references—which they are—we "will accept as true the facts stated." Tex. R. App. P. 38.1(g); *see W. Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006). Here, then, are the undisputed facts from the Bank's brief:

> Jose S. Rodriguez, for value received, made, executed and delivered to Wells Fargo a Well[s] Fargo Consumer Credit Card Customer Agreement and Disclosure Statement evidencing a line of credit (the "Account"). On or about December 8, 2017, Rodriguez accessed the Account. The Account provided for Rodriguez to make payments to Wells Fargo of all principal and interest. Although some payments were made by Rodriguez there was a default on the Account. Although

2

demand for payment was made by Wells Fargo, the Account was not paid. There is now . . . due and owing the sum of $6,047.85 on the Account. [Record citations omitted.]

The summary-judgment record shows these additional facts: Under the heading "Your Contract With Us," the Bank's Consumer Credit Card Customer Agreement & Disclosure Statement (the Agreement) states that "[y]ou and any joint Account holder accept the terms of this Agreement by using or activating your Account." Another provision—"Promise to Pay"—states that using the account obligates the accountholder to pay the Bank all resulting principal and interest amounts. The Agreement also states that if "[y]ou fail to pay a Minimum Payment by the Payment Due Date," the Bank "may require immediate payment of your total Account." And the Agreement provides that "[i]f your account is in default you agree to pay our collection costs, attorney's fees, and court costs incurred in enforcing our rights under this agreement."

Rodriguez made periodic monthly payments, the last one on July 26, 2019, for $100. Rodriguez's indebtedness ultimately totaled $6,047.85, including fees and interest. In August 2019, the Bank sent a written notice of its intent to accelerate. The Bank followed up the next month with a written notice dated September 13, 2019, telling Rodriguez that it had accelerated the entire balance and demanding full payment.[1] After getting no response, the Bank sued Rodriguez in December 2019.

---

[1]The Bank submitted evidence of intent to accelerate, acceleration, and demand in response to Rodriguez's no-evidence motion.

**The Competing Summary-Judgment Motions and Responses**

*The Bank's motion:* The Bank filed a traditional summary-judgment motion under procedural rule 166a(a), attaching an affidavit from one of its loan adjusters to prove up Rodriguez's debt and the Bank's agreement to pay its attorneys a reasonable fee. It also attached an affidavit from its trial counsel to prove up that fee. *See* Tex. R. Civ. P. 166a(a), (c). Emily Little, the loan adjuster, attached to her affidavit three of the Bank's records: the Agreement; the July 28, 2019 statement for Rodriguez's account, which "evidenc[ed] last payment/usage" (the $100 payment); and a late-2019 statement showing a balance due and owing of $6,047.85. That statement warned Rodriguez that his account was in default and that the Bank might accelerate the entire balance.

Rodriguez responded with objections to the form of Little's affidavit and with argument but offered no controverting evidence. Rodriguez did not obtain a ruling on his objections.[2]

---

[2] If a party does not obtain a ruling on an objection to the form of summary-judgment evidence, the objection is not preserved. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164–65 (Tex. 2018). Without a ruling, the complained-of evidence remains part of the summary-judgment record and should be considered by an appellate court in reviewing the summary judgment. *FieldTurf USA, Inc. v. Pleasant Grove ISD*, No. 20-0507, 2022 WL 627769, at *6 (Tex. Mar. 4, 2022) (citing *Seim*, 551 S.W.3d at 166). Unless the record shows a clearly implied ruling, a ruling on evidentiary objections is required to preserve error. *See Seim*, 551 S.W.3d at 165–66. A trial court's ruling on a summary-judgment motion is generally not an implicit ruling on objections to the summary-judgment evidence. *See id.*

*Rodriguez's motion:* Rodriguez filed a no-evidence motion on all the Bank's claims. *See* Tex. R. Civ. P. 166a(i). In challenging the attorney's-fee claim, Rodriguez invoked Section 38.001 of the Texas Civil Practice & Remedies Code and asserted that no evidence existed that Rodriguez had agreed to pay the Bank's attorney's fees or that the Bank had presented the claim to Rodriguez within the meaning of Section 38.002(2).[3] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, .002(2).

The Bank responded with affidavits from a different loan adjuster, Megan Smith, and from Edgar Quijada, a lawyer with the firm representing the Bank, to which was attached a September 25, 2019 demand letter. Smith's affidavit attached another copy of the Agreement, as well as each of Rodriguez's monthly credit-card statements from December 2017 through November 2019, verifications that Rodriguez was not in the military service, the Bank's notice of intent to accelerate, and its notice of acceleration.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When both parties move for summary judgment and the trial

---

[3]The Bank did not rely solely on Chapter 38 in seeking attorney's fees; it pleaded for them "pursuant to [Section 38.001] and the terms of the Account." As we noted, the Agreement provides that "[i]f your account is in default you agree to pay our collection costs, attorney's fees, and court costs incurred in enforcing our rights under this agreement." "Parties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *see also Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 706 (Tex. App.—Fort Worth 2018, pet. denied) (same). Unlike Section 38.002(2), the Agreement here does not require presuit presentment.

court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848. A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v.*

6

*O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## Discussion

### A. The Bank's evidence sufficed to defeat Rodriguez's no-evidence motion.

Because the Bank moved for traditional summary judgment only on its breach-of-contract claim—a motion the trial court should have granted—we will limit our discussion of Rodriguez's competing no-evidence motion to that claim.[4] The elements of a breach-of-contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 282 (Tex. App.—Fort Worth 2018, no pet.).

Rodriguez asserted that no evidence existed of a valid contract, that Rodriguez had breached the contract, that the Bank had notified him of his default, or that the Bank had accelerated the debt. The Bank responded with evidence of each,[5] and Rodriguez did not object to any of the Bank's evidence.

---

[4]In other words, we do not address whether the trial court properly granted Rodriguez's no-evidence motion on the Bank's account-stated claim because it would not result in greater relief for the Bank. *See* Tex. R. App. P. 47.1.

[5]Notices of default and acceleration are not essential elements of a straightforward breach-of-contract claim unless a contract calls for them. The Agreement here does not require the Bank to give Rodriguez such notices, although the Bank did so.

7

When someone uses a credit card issued in his name, a contract is formed. *See, e.g., Hinojosa v. Citibank (S.D.), N.A.*, No. 05-07-00059-CV, 2008 WL 570601, at \*3 (Tex. App.—Dallas Mar. 4, 2008, pet. denied) (mem. op.) (concluding that "Citibank established Hinojosa accepted the card and used it; therefore, it established the existence of a contract as a matter of law" under federal, Texas, or South Dakota[6] law); *Jones v. Citibank (S.D.), N.A.*, 235 S.W.3d 333, 339 (Tex. App.—Fort Worth 2007, no pet.) (noting applicability of South Dakota law and holding that "by using the credit card that [Citibank] issued to her, appellant entered into a binding contract"). Here, Rodriguez never denied having used his Wells Fargo card, nor did he controvert his use as evidenced by the charges on the monthly statements, and the Agreement reflects the contractual terms, including the Bank's right to require Rodriguez to immediately pay the outstanding balance if he did not make a timely minimum payment.

And the Bank offered evidence of Rodriguez's default through Smith's affidavit in which she averred that Rodriguez "defaulted under the terms of the Agreement, by failing and refusing to make payments as required under the terms of the Agreement" and that Rodriguez's balance due and owing was $6,047.85, as the documents she attached also revealed. *See Towncreek Indus., LLC v. Wells Fargo Bank, N.A.*, No. 02-15-

---

[6]South Dakota law governs the Agreement here. That state became the first wildly attractive corporate home for credit-card companies when it passed a law over 40 years ago eliminating any ceiling on interest rates. *See Frontline: Secret History of the Credit Card* (PBS television broadcast Nov. 23, 2004), *transcript available at* https://www.pbs.org/wgbh/pages/frontline/shows/credit/etc/script.html.

00393-CV, 2016 WL 6305257, at *5 (Tex. App.—Fort Worth Oct. 27, 2016, no pet.) (mem. op.) ("To establish the amount owed, McKinney's affidavit needed to state only the total amount due on the note based on his personal knowledge as a bank officer; detailed proof of the balance of the note was not required.").

The Bank's evidence sufficed to defeat Rodriguez's no-evidence motion on the Bank's breach-of-contract and attorney's-fee claims. We sustain the Bank's first issue.

## B. The Bank proved Rodriguez's breach of contract as a matter of law.

Although the Bank responded to the no-evidence motion by providing more-comprehensive documentation, its own traditional motion and supporting evidence established its contract claim as a matter of law.

A case from our sister court in Houston (coincidentally also involving Wells Fargo) is similar. *Germany v. Wells Fargo Bank, NA*, No. 14-17-00916-CV, 2019 WL 470256 (Tex. App.—Houston [14th Dist.] Feb. 7, 2019, pet. denied) (mem. op.). In *Germany*, Wells Fargo's successful summary-judgment motion attached an affidavit from a loan adjustor who—like Little—testified that he worked for Wells Fargo and had acquired personal knowledge of the business records relating to the defendant's account. *Id.* at *1. Also like Little, the Wells Fargo employee attached and described three documents of the same type as here: a consumer-credit-card agreement; a credit-card statement reflecting the defendant's last payment; and a later statement showing the amount due and owing after, as the affiant testified, the entire balance on the defendant's account had been accelerated according to the agreement's terms. *Id.* The

9

Fourteenth Court affirmed summary judgment on this evidence, barebones as it was. *See id.* at \*4.

Particularly in the absence of any controverting evidence from Rodriguez or any rulings on his objections to the form of the Bank's evidence, we conclude that the trial court erred in failing to grant the Bank summary judgment on its breach-of-contract claim. Moreover, Rule 38.1(g) allows us to accept the Bank's record-supported fact statements as true because Rodriguez filed no brief, and those statements establish the contract, breach, and resulting damages. *See* Tex. R. App. P. 38.1(g). We will render judgment in the Bank's favor for its damages of $6,047.85.

We cannot, however, render judgment in the Bank's favor on its attorney's fees. The Bank's trial counsel submitted an affidavit averring that $800 was a reasonable and necessary fee through summary judgment, that an additional $5,000 would be reasonable and necessary at the intermediate-court level, and that a further $5,000 would be reasonable and necessary if the case goes to the Texas Supreme Court on a petition for review. No billing records were attached.

Although billing records, while "*strongly* encouraged," are not required to prove up attorney's fees, a party seeking its fees must nonetheless present "sufficient evidence" that "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*

10

*Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498, 502 (Tex. 2019). "Without detail about the work done, how much time was spent on the tasks, and how he arrived at the . . . sum, [the attorney's] testimony lacks the substance required to uphold a fee award." *Id.* at 505.

These minimum criteria are lacking here. The attorney's-fee affidavit stated that the drafter's hourly rate was $200 and that the Bank had authorized him to perform four hours of work on four general categories of services.[7] Even though Rodriguez did not challenge these asserted attorney's fees as unreasonable or unnecessary, the Bank still must carry its burden of proof. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017).

We have found similarly general testimony to be insufficient to overcome sufficiency challenges, much less to meet the summary-judgment standard of proof as a matter of law. *See Skeels v. Suder*, No. 02-18-00112-CV, 2021 WL 4785782, at *12–13 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op. on reh'g); *Bishara v. Tex.*

---

[7]In relevant part, the affidavit provides as follows:

> In connection with my work on this matter I have, among other things, received and reviewed materials relating to the matter, considered and analyzed applicable causes of action under Texas Law, drafted and had sent a demand letter, drafted a petition, prepared and arranged for service of process, prepared the pleadings in connection with a request for entry of judgment, including a proposed final judgment. Wells Fargo has agreed to pay 0.5 hours for a meaningful attorney review and analysis of the case materials and drafting a demand letter, 1.5 hours in preparation of the petition and arrangement of service of process, 0.5 hours for review of Answer, and 1.5 hours in preparation of the Motion for Summary Judgment, its attachments and the proposed judgment.

*Health Harris Methodist Hosp. Fort Worth Inc.*, No. 02-20-00316-CV, 2021 WL 3085748, at *7 (Tex. App.—Fort Worth July 22, 2021, no pet.) (mem. op.); *Silverio v. Traditional Heritage Vill. Homeowners Ass'n, Inc.*, No. 02-19-00347-CV, 2020 WL 4907335, at *5–6 (Tex. App.—Fort Worth Aug. 20, 2020, no pet.) (mem. op.).

The Bank's affidavit evidence about conditional appellate fees is even sparser than its averments concerning trial-court fees: "It is my opinion . . . that an additional $5,000.00 is reasonable and necessary in the event of an appeal to the Court of Appeals, and that the sum of an additional $5,000.00 is reasonable and necessary in the event a petition for review is sought in the Supreme Court of Texas." To support a conditional award of appellate attorney's fees, a party must provide "opinion testimony about the services [they] reasonably believe[] will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell*, 620 S.W.3d at 355; *see also Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *19 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.). The Bank has not provided such testimony.

We sustain the Bank's second issue insofar as it is entitled to summary judgment on Rodriguez's indebtedness as a matter of law but will remand the attorney's-fee issue to the trial court. *See Long v. Griffin*, 442 S.W.3d 253, 255–56 (Tex. 2014); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012); *Bishara*, 2021 WL 3085748, at *7.

## Conclusion

Having sustained both of the Bank's issues, we reverse the trial court's judgment on the Bank's breach-of-contract and attorney's-fee claims, render judgment for the Bank on its breach-of-contract claim for $6,047.85, and remand the issue of the Bank's attorney's fees for further proceedings consistent with this opinion. We affirm the rest of the trial court's judgment.

/s/ Elizabeth Kerr

Elizabeth Kerr
Justice

Delivered: March 17, 2022

13